# EXHIBIT A

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2014 FEB 13  PM 12:08

CLERK OF THE COURT

DEPUTY CLERK

1  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2  ROBERT R. MOORE (BAR NO. 113818)
   MICHAEL J. BETZ (BAR NO. 196228)
3  CATHY A. HONGOLA-BAPTISTA (BAR NO. 234489)
   Three Embarcadero Center, 12th Floor
4  San Francisco, CA  94111-4074
   Phone: (415) 837-1515
5  Fax:  (415) 837-1516
   E-Mail:  rmoore@allenmatkins.com
6           mbetz@allenmatkins.com
            chongola@allenmatkins.com
7
   Attorneys for Plaintiff
8  Evon Corporation

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              FOR THE COUNTY OF SAN FRANCISCO

11

12  EVON CORPORATION,                    Case No. CGC-14-537426

13          Plaintiff,                   COMPLAINT FOR:
                                         1. BREACH OF CONTRACT
14      v.                               2. BREACH OF IMPLIED COVENANT OF
                                         GOOD FAITH AND FAIR DEALING
15  JUSTICE INVESTORS, a California      3. BREACH OF FIDUCIARY DUTY
    limited partnership; PORTSMOUTH      4. CONVERSION
16  SQUARE, INC., a California Corporation;  5. INTENTIONAL INTERFERENCE WITH
    GEOFFREY M. PALERMO, an individual;  PROSPECTIVE ECONOMIC ADVANTAGE
17  DOES 1-20, inclusive,                6. NEGLIGENT INTERFERENCE WITH
                                         PROSPECTIVE ECONOMIC ADVANTAGE
18          Defendants.                  7. FRAUD/CONCEALMENT
                                         8. SECURITIES FRAUD IN VIOLATION OF 15
19                                       U.S.C. 78J(B)

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

912559.02/SF

COMPLAINT

Plaintiff Evon Corporation alleges as follows:

**PARTIES**

1.      Plaintiff Evon Corporation ("Evon" or "Plaintiff") is a California corporation located in San Francisco, California.

2.      Defendant Justice Investors ("Justice") is a California limited partnership located in San Francisco, California.

3.      Defendant Portsmouth Square, Inc. ("Portsmouth") is a California corporation located in San Francisco, California.

4.      Defendant Geoffrey M. Palermo ("Palermo") is an individual residing in Novato, California.  Palermo was employed as the Asset Manager for Justice.

5.      Justice Holdings, LLC ("Holdings") is a Delaware limited liability company. Pursuant to the Limited Liability Company Agreement of Justice Holdings, LLC, Holdings' manager is Evon and Holdings' sole member is Justice.

6.      Justice Operating, LLC ("Operating") is a Delaware limited liability company.  On information and belief, Operating is wholly owned by Justice.

7.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Doe One through Doe Twenty, inclusive, are unknown to Evon, who therefore sues these Defendants by fictitious names pursuant to Code of Civil Procedure section 474.  Evon will ask leave of this Court to amend this Complaint when said true names and capacities have been ascertained.

8.      At all times mentioned herein, each of the Defendants was the agent, employee, co-venturer, partner, or in some manner agent or principal, or both, of each and every other Defendant and was acting within the course and scope of such agency and employment.  Evon is further informed and believes and thereupon alleges that each of the Defendants, including the Doe Defendants herein, have some liability as described below.

## GENERAL ALLEGATIONS

### The Offer to Redeem

9.  Justice was formed in 1967.  Justice had two co-general partners, Portsmouth and Evon, as well as approximately 110 limited partners, the largest of which was Portsmouth which owned 50% of the limited partnership interest.  Until recently, Justice was operating pursuant to an Amended and Restated Agreement of Limited Partnership dated as of November 30, 2010.

10.  The principal asset of Justice is the Hilton San Francisco Financial District hotel (the "Hotel").

11.  On or about September 19, 2013, after a series of disagreements between Evon and Portsmouth, including whether to sell the Hotel, Evon and Portsmouth agreed to cooperate in the financing and consummation of Portsmouth's proposal to offer Justice's limited partners an opportunity to redeem their partnership interests.  Pursuant to Portsmouth's proposal, the redemption would be funded by refinancing the Hotel.  Evon and Portsmouth set forth their agreement in a letter dated September 19, 2013, which stated among other provisions, that:

- Section 1: "Justice intends to offer to redeem the interests of its limited partners (other than Portsmouth) at a redemption value equal to $1,385,00 for each on percent interest in Justice (the "agreed Value)."

- Section 2: "Whether through the Proposed Transaction or otherwise, Justice will not offer to redeem any limited partnership interests at a value less than $1,385,000 for each one percent interest of Justice, nor modify any other material term of the Proposed Transaction, without obtaining Evon's prior consent."

- Section 3: "Evon and Portsmouth have agreed on a number of the terms of the Proposed Transaction, including...(iv) Evon's right to information regarding the Proposed Transaction, including weekly calls with the broker and access to all documents and correspondence sent to, and received from, the lender."

12.  On or about September 19, 2013, Justice sent its limited partners a letter proposing an opportunity for the limited partners to redeem their interests in Justice.  The letter set forth the general terms of the redemption offering:

- "Those investors who agree to redeem their interest will have a choice between accepting a) a simple cash redemption; or b) a somewhat more involved alternative... ."

- "The structure of the transaction involves Justice funding a redemption of investors through a refinancing of the hotel property.   Using this methodology... the proportionate ownership of Justice by those partners who did not redeem their interests (including Portsmouth) would increase."

- "Portsmouth would become the sole, managing general partner [of Justice]."

13.    The September 19, 2013 letter requested the limited partners respond and indicate their interest in pursuing a redemption offer.

14.    On or about October 31, 2013, after receiving sufficient interest from the limited partners, Justice made an offer to redeem any and all outstanding limited partnership interests.  A true and correct copy of the October 31, 2013 offer to redeem is attached hereto as Exhibit A and incorporated herein by reference.

15.    The limited partners were presented with two alternatives to redeem their interests.    Limited partners who did not elect either redemption option would remain limited partners in Justice.  Any and all tenders had to be received by November 30, 2013.

16.    The first redemption option was a cash option, whereby Justice would redeem, for cash, limited partnership interests at a value of $1,385,000 per one percent interest.

17.    The second, alternative redemption option was more complex and required execution of, among other documents, a Limited Partnership Redemption Option Agreement ("RO Agreement") to carry out the redemption.  The alternative redemption option, as set forth in the RO Agreement, would proceed as follows:  (1) Justice would transfer the cash value of each limited partner's interest (at a value of $1,385,000 per one percent interest) to Holdings, (2) each limited partner would then have up to one year to locate property for purchase by Holdings in a value equal to their individual limited partnership interests, and (3) after the property had been purchased by Holdings, the limited partner could request that Holdings transfer the acquired property to him, thereby

1  redeeming that partner's limited partnership interests.  The limited partners who elected the

2  alternative redemption option are referred to herein as "Optionees."

3      18.    The October 31, 2013 offer to redeem did not disclose (1) that the City of

4  San Francisco might assert a substantial transfer tax in connection with the refinancing of

5  the Hotel, or (2) that it would be the responsibility of the Optionees to pay any costs or

6  taxes associated with transferring the Hotel in Operating for purposes of the refinancing.

7      19.    At the same time Justice made the offer to redeem, it also sought approval to

8  amend the Partnership Agreement to, among other things, provide for a single general

9  partner (Portsmouth).

10      20.    Holders of approximately 29.173% of the limited partnership interests

11  tendered their interests for cash, and, on information and belief, payments to those limited

12  partners have been made.  Holders of approximately 17.146% of the limited partnership

13  interests elected the alternative redemption option.  After the redemption of all the partners

14  who chose to receive cash or participate in the alternative redemption option, Portsmouth

15  would own approximately 93.143% of Justice.

16      **The Alternative Redemption Option**

17      21.    To implement the alternative redemption option, Holdings was formed, and

18  Justice, Evon and the Optionees (the limited partners electing the alternative redemption

19  option) executed the RO Agreement.

20      22.    Section 1.1 of the RO Agreement provides:

21          [Justice] **shall transfer** [to Holdings] concurrently with the
closing of the Hotel Loan an amount of money equal to One

22          Million Three Hundred Eighty Five Thousand Dollars
($1,385,000.00) times the total Participation Percentages held

23          by all Optionees set forth in Exhibit A attached hereto (the
"Transferred Amount").  (Emphasis added)

24

25      23.    Section 2.1 further provides that the Optionees have the right to cause

26  Holdings to obtain qualifying property subject to any costs Holdings incurs in obtaining

27  property for the Optionee:

28          Each Optionee shall have the right, but not the obligation, to
cause [Holdings] to expend an amount of money equal to One

Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times the Participation Percentage set forth next to that Optionee's name in Exhibit A (with respect to each Optionee, the "Optionee Allocable Amount") to acquire and hold property or property which that Optionee shall be entitled to receive in complete or partial redemption of the Optionee's Interest ("Qualifying Property"), subject to the terms and condition[s] set forth in this Agreement, provided however that for each Optionee, the Optionee Allocable Amount shall be subject to a reduction for any and all costs and expenses **which are associated with any transaction undertaken by [Holdings] for the benefit of such Optionee.** (Emphasis added.)

24.     Section 3.6 of the RO Agreement also provides that "[f]or the avoidance of doubt and in furtherance of Section 2.1 it is expressly acknowledged that: (i) the sole financial obligation of [Justice] under this Agreement is to deposit the Transferred Amount to [Holdings]… ."

25.     There is no language in the RO Agreement (1) requiring Optionees to pay for the costs of the refinancing of the Hotel debt, or (2) permitting Justice to withhold funds required to be transferred to Holdings based on taxes assessed in connection with the refinancing of the Hotel.

### Justice and Portsmouth Fail to Fund Holdings As Required

26.     Justice and Portsmouth maintain that as part of the refinancing of the Hotel, the lenders required the Hotel be transferred to a new wholly owned, indirect subsidiary of Justice, Justice Operating Company, LLC ("Operating").

27.     Prior to closing on the new Hotel loan, Justice, Portsmouth and Palermo learned that the City of San Francisco would assert a substantial transfer tax in connection with the transfer of the Hotel to Operating.   Neither Justice, Portsmouth or Palermo disclosed this information to Evon, a co-general partner of Justice, or the limited partners, including the Optionees, prior to making the offer to redeem or closing on the Hotel loan.

28.     Only after the new Hotel loan closed, and by letter dated December 19, 2013, Justice and Portsmouth informed Evon and the limited partners for the first time that the City of San Francisco claimed the refinancing transaction was subject to a $4,658,084.55 transfer tax:

In connection with the conveyance of the Hotel to Operating, San Francisco asserted that a substantial documentary transfer tax was payable (over $4.6 million). Based on advice of its transfer tax counsel, Justice believes that the City's assertion is incorrect and is taking steps to contest this tax. The City required payment of the contested tax as a condition to the recordation required to complete the financing needed to finance the redemption. Therefore, Justice complied and made such payment, under protest.

29. In the same December 19, 2013 letter, Justice and Portsmouth informed Evon and the Partners that "[t]he funds used to pay the contested tax have been drawn from the funds being deposited with Holdings." Justice and Portsmouth asserted that they would fight the tax, but that the decision to use of funds earmarked for Holdings was "in accordance with provisions of the Redemption Option Agreement." Justice and Portsmouth did not, however, identify any provision of the RO Agreement in which Evon or the Optionees agreed to foot the bill for any tax associated with the transfer of the Hotel.

30. The total amount required to be deposited with Holdings was $23,747,627.85. The total amount actually deposited with Holdings, after the withholding for the City's claimed transfer tax, was only $19,089,543.30.

31. Evon immediately demanded Justice and Portsmouth transfer to Holdings the $4,658,084.55 withheld from Holdings. Justice and Portsmouth have failed and refused to deposit the remaining $4,658,084.55 into Holdings.

32. As a result of Justice's and Portsmouth's to deposit the remaining $4,658,084.55 into Holdings, the Optionees lacked the funds necessary to complete their anticipated property purchases as part of the redemption.

33. Evon brings the causes of action alleged against Justice, Portsmouth and Palermo in this complaint on behalf of itself and the Optionees.

## FIRST CAUSE OF ACTION

### (For Breach of Contract Against Justice and Does 1-20)

34. Evon incorporates by this reference the allegations set forth in paragraphs 1 through 33 as if specifically set forth herein.

35.   Justice, Evon and the Optionees entered into the RO Agreement, dated December 18, 2013.

36.   The RO Agreement required Justice to transfer to Holdings "concurrently with the closing of the Hotel Loan an amount of money equal to One Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times the total Participation Percentages held by all Optionees."   The RO Agreement also provides that "[f]or the avoidance of doubt... it is expressly acknowledged that: (i) the sole financial obligation of [Justice] under this Agreement is to deposit the Transferred Amount to [Holdings]... ."

37.   Evon and the Optionees performed all conditions and obligations to be performed on their part under the RO Agreement, except to the extent that said obligations and conditions were excused.

38.   Justice breached the RO Agreement by failing and refusing to transfer to Holdings, and thus to the Optionees, concurrently with the closing of the Hotel Loan an amount of money equal to One Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times the total Participation Percentages held by all Optionees. Specifically, Justice failed to transfer $4,658,084.55 to Holdings, as required.

39.   Justice's breaches have caused Optionees damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against Justice and Does 1-20)

40.   Evon incorporates by this reference the allegations set forth in paragraphs 1 through 39 as if specifically set forth herein.

41.   Inherent in every contract, including the agreements described herein, is the implied covenant of good faith and fair dealing that imposes upon each party to the contract the duty to refrain from doing anything which would render the contract impossible and imposes a duty upon each party to do everything that the contract presupposes that the party will do to accomplish its purpose.

42.     Justice, Evon and the Optionees entered into the RO Agreement, dated December 18, 2013.

43.     The RO Agreement required Justice to transfer to Holdings "concurrently with the closing of the Hotel Loan an amount of money equal to One Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times the total Participation Percentages held by all Optionees."  The RO Agreement also provides that "[f]or the avoidance of doubt... it is expressly acknowledged that: (i) the sole financial obligation of [Justice] under this Agreement is to deposit the Transferred Amount to [Holdings]... ."

44.     Evon and the Optionees performed all conditions and obligations to be performed on their part under the RO Agreement, except to the extent that said obligations and conditions were excused.

45.     Justice breached the RO Agreement by failing and refusing in bad faith to transfer to Holdings concurrently with the closing of the Hotel Loan an amount of money equal to One Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times the total Participation Percentages held by all Optionees.  Specifically, Justice's failure to transfer $4,658,084.55 to Holdings, and thus the Optionees, unfairly frustrated the benefits the Optionees were to receive under the RO Agreement.

46.     Justice's breaches have caused Optionees damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### (For Breach of Fiduciary Duties Against Portsmouth and Does 1-20)

47.     Evon incorporates by this reference the allegations set forth in paragraphs 1 through 46 as if specifically set forth herein.

48.     General partners are bound to act with loyalty and in the highest good faith to their copartners and may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

49.     Portsmouth's intentional concealment of the possibility the transfer tax would be imposed, the failure to disclose that Portsmouth believed any transfer tax associated

1   with transferring the Hotel to Operating would be the burden of Optionees to pay, and

2   Portsmouth's decision to pay the tax with the Optionees' redemption funds is a breach of

3   Portsmouth's fiduciary duties of care and loyalty to Evon, as co-general partner, and the

4   Optionees, as limited partners.

5       50.    As a proximate result of Portsmouth's breach of its fiduciary duties, Evon

6   and the Optionees suffered damage, in a sum according to proof at the time of trial, in that

7   Portsmouth caused Justice to withhold $4,658,084.55 from the Optionees and the

8   Optionees were unable to pursue property transactions that would have been consummated

9   but for Portsmouth's breach.

10      51.    In performing the acts described above, Defendants acted willfully,

11  maliciously, oppressively, with the intent to interfere with Evon's and Optionees' rights and

12  with conscious disregard for Evon's and Optionees' rights and the damages they would

13  suffer thereby. Evon and Optionees are therefore entitled to punitive damages in a sum

14  according to proof at the time of trial.

15                      **FOURTH CAUSE OF ACTION**

16              **(For Conversion Against Justice and Portsmouth and Does 1-20)**

17      52.    Evon incorporates by this reference the allegations set forth in paragraphs 1

18  through 51 as if specifically set forth herein.

19      53.    At all times mentioned, and in particular on or about December 18, 2013,

20  Optionees were the owners of and/or had an immediate right to possession of

21  $23,747,627.85.

22      54.    On or about December 18, 2013, Defendants, without premised, exercised

23  dominion and control over Optionee's $23,747,627.85 by using $4,658,084.55 of the

24  $23,747,627.85 to pay a contested transfer tax to the City of San Francisco. Defendants

25  conduct amounts to a substantial interference with Optionee's possession and/or ownership

26  of $4,658,084.55 of Optionees' property.

27      55.    In performing the acts described above, Defendants acted willfully,

28  maliciously, oppressively, with the intent to interfere with Optionees' rights and with

1  conscious disregard for Optionees' rights and the damages they would suffer thereby.

2  Optionees are therefore entitled to punitive damages in a sum according to proof at the

3  time of trial.

### FIFTH CAUSE OF ACTION

**(For Intentional Interference with Prospective Economic Advantage**

**Against Justice, Portsmouth, Palermo and Does 1-20)**

7      56.    Evon incorporates by this reference the allegations set forth in paragraphs 1

8  through 53 as if specifically set forth herein.

9      57.    Optionees were in discussions to acquire properties as part of the redemption

10  of their limited partnership interests.

11      58.    Defendants knew that the Optionees were engaged in negotiations to

12  purchase properties based on their election of the alternative redemption option, and

13  because the purpose of the alternative redemption option was to enable Optionees to look

14  for property to exchanging their limited partnership interests for.

15      59.    Defendants disrupted the Optionees' property transaction by intentionally

16  failing and refusing to transfer to Holdings concurrently with the closing of the Hotel Loan

17  an amount of money equal to One Million Three Hundred Eighty Five Thousand Dollars

18  ($1,385,000.00) times the total participation percentages held by all Optionees.

19      60.    The failure to fully fund Holdings as required and instead withhold

20  $4,658,084.55 from Holdings and the Optionees actually disrupted and prevented

21  Optionees from closing on their anticipated property purchases.

22      61.    As alleged herein, Defendants' conduct was fraudulent and a breach of their

23  contractual and fiduciary obligations.

24      62.    As a proximate result of Defendants' conduct, Optionees have suffered

25  damages in an amount to be determined at trial.

26      63.    In performing the acts described above, Defendants acted willfully,

27  maliciously, oppressively, with the intent to interfere with Optionees' rights and with

28  conscious disregard for Optionees' rights and the damages they would suffer thereby.

1    Optionees are therefore entitled to punitive damages in a sum according to proof at the

2    time of trial.

3                              <u>SIXTH CAUSE OF ACTION</u>

4              **(For Negligent Interference with Prospective Economic Advantage**

5                   **Against Justice, Portsmouth, Palermo and Does 1-20)**

6          64.    Evon incorporates by this reference the allegations set forth in paragraphs 1

7    through 63 as if specifically set forth herein.

8          65.    Optionees were in discussions to acquire properties as part of the redemption

9    of their limited partnership interests.

10         66.    Defendants knew that the Optionees were engaged in negotiations to

11   purchase properties based on their election of the alternative redemption option, and

12   because the purpose of the alternative redemption option was to enable Optionees to look

13   for property to exchanging their limited partnership interests for.

14         67.    Defendants knew that by failing and refusing to transfer to Holdings, and

15   thus the Optionees, concurrently with the closing of the Hotel Loan an amount of money

16   equal to One Million Three Hundred Eighty Five Thousand Dollars ($1,385,000.00) times

17   the total participation percentages held by all Optionees, the Optionees might not be able

18   to close on their anticipated property transactions.

19         68.    Defendants nevertheless failed to fully fund Holdings and instead withheld

20   $4,658,084.55 from Holdings, which actually disrupted and prevented Optionees from

21   closing on their anticipated property transactions.

22         69.    Defendants' conduct was fraudulent and a breach of their contractual and

23   fiduciary obligations.

24         70.    As a proximate result of Defendants' conduct, Optionees have been damaged

25   in an amount to be determined at trial.

26

27

28

**SEVENTH CAUSE OF ACTION**

**(For Fraud/Concealment Against Justice, Portsmouth, and Palermo and Does 1-20)**

71.    Evon incorporates by this reference the allegations set forth in paragraphs 1 through 70 as if specifically set forth herein.

72.    On or about September 19, 2013, Justice sent its limited partners a letter proposing an opportunity for the limited partners to redeem their interests in Justice.

73.    On or about October 31, 2013, Justice made an offer to redeem any and all outstanding limited partnership interests and the parties electing the alternative redemption option signed the RO Agreement.

74.    The September 19, 2013 letter, October 31, 2013 offer to redeem and the RO Agreement failed to disclose (1) the possibility that the City might assert a transfer tax liability in connection with the transfer of the Hotel to Operating, and (2) that Defendants would reduce the redemption funds owed to the Optionees to pay for any transfer tax liability.

75.    Defendants knew, however, prior to closing on the Hotel loan that the City would assert transfer tax liability, and failed to disclose this possibility to Evon or the Optionees, despite repeated requests from the Evon and the Optionees for further information.

76.    As a general partner, Evon was entitled to and should have been informed of the possibility that the City would impose a substantial transfer tax.  The Optionees, as limited partners, were also entitled to that material information so they could make an informed decision regarding their redemption options.  Defendants had an additional duty to disclose this material information to make the statements made about the redemption offering not misleading.

77.    Defendants failed to disclose the City might assert transfer tax liability or that Defendants would reduce the redemption funds owed to the Optionees to pay for any transfer tax liability with the intent to induce Evon and the Optionees to participate in the redemption offering.

78.   Evon and the Optionees, at the time these failures to disclose and misrepresentations occurred, and at the time the Optionees elected to participate in the redemption offering, were ignorant of the facts not disclosed by Defendants.  If Optionees and Evon been told about the tax, and that Justice and Portsmouth would hold the Optionees responsible for paying the tax, they would not have moved forward with the alternative redemption option.

79.   As a proximate result of the fraudulent conduct of the Defendants as herein alleged, the Optionees were damaged in an amount to be proven at trial.

80.   In performing the acts described above, Defendants acted willfully, maliciously, oppressively, with the intent to interfere with Optionees' rights and with conscious disregard for Optionees' rights and the damages they would suffer thereby. Optionees are therefore entitled to punitive damages in a sum according to proof at the time of trial.

### EIGHTH CAUSE OF ACTION

### (For Securities Fraud in Violation of 15 U.S.C. § 78j(b)

### Against Justice and Portsmouth and Does 1-20)

81.   Evon incorporates by this reference the allegations set forth in paragraphs 1 through 80 as if specifically set forth herein.

82.   In connection with the offer to redeem and refinancing of the hotel, the Defendants made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made not misleading in violation of 10b of the Exchange Act and Rule 10b-5 promulgated thereunder.

83.   In addition to the duties of good faith and full disclosure imposed on Defendants by their status as fiduciaries, as a result of their affirmative statements, or participation in the making of affirmative statements, Defendants had a duty to provide truthful information that would be material to the Optionees, including accurate and truthful information with respect to the redemption offering, including the existence of potential tax liabilities and the source of funds that would be used to pay those liabilities,

1  so that the limited partners could accurately determine whether or how to participate in the
2  redemption.

3      84.    Defendants, by using the means and instrumentalities of interstate commerce
4  and/or the mails, engaged and participated in a continuous course of conduct to conceal
5  adverse material information about the redemption offering from the Optionees.   The
6  Defendants employed devices, schemes and artifices to defraud, while in possession of
7  material adverse non-public information and engaged in acts, practices, and a course of
8  conduct as alleged herein in an effort to assure the Optionees of the value of the alternative
9  redemption offering, which included the making of, or participation in the making of,
10  untrue statements of material facts and omitting to state material facts necessary in order to
11  make the statements made about the redemption offering, in light of the circumstances
12  under which they were made, not misleading, and engaged in course of conduct which
13  operated as a fraud and deceit upon the Optionees.

14      85.    The Defendants had actual knowledge of the misrepresentations and
15  omissions of material facts set forth herein or reckless disregarded the same.  Defendants'
16  material misrepresentations or omissions were done knowingly or recklessly and for the
17  purpose and effect of concealing the existence of the transfer tax and who would pay for it.

18      86.    As a result of the dissemination of the materially false and misleading
19  information and failure to disclose material facts by Defendants, the Optionees elected to
20  redeem their limited partnership interests by opting for the alternative redemption option.

21      87.    At the time of said misrepresentations and omissions, Optionees and Evon
22  were ignorant of their falsity and believed them to be true.  Had Optionees or Evon known
23  of the tax liability and that the value of the Optionees' interests would be reduced to pay
24  the tax liability, they would not have elected to redeem their options pursuant to the
25  alternative redemption option.

26      88.    As a direct and proximate result of the wrongful conduct of Defendants,
27  Optionees have suffered damages in an amount to be proven at trial.

28

89. In performing the acts described above, Defendants acted willfully, maliciously, oppressively, with the intent to interfere with Optionees' rights and with conscious disregard for Optionees' rights and the damages they would suffer thereby. Optionees are therefore entitled to punitive damages in a sum according to proof at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Evon prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For consequential damages in an amount to be proven at trial;

3. For punitive damages;

4. For costs of suit incurred herein;

5. For reasonable attorneys' fees; and,

6. For such other relief as the Court deems just and proper.

Dated: February 11, 2014

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
ROBERT R. MOORE
MICHAEL J. BETZ
CATHY A. HONGOLA-BAPTISTA


By: _Robert R. Moore_
ROBERT R. MOORE
Attorneys for Plaintiff
Evon Corporation

# EXHIBIT A

## LIST OF DOCUMENTS SENT TO LIMITED PARTNERS

**Form of Redemption Election, Written Consent and Proxy and Instructions- Appendix B to Offer to Redeem**

After reading the documents included in this package, the limited partner should check the appropriate box, if any, and, if a box is checked, date and sign on page B-3 and return the Form in the self-addressed, postage prepaid envelope provided for your convenience. The Form may also be delivered by facsimile to (415) 984-0783, but we suggest that you also return the originals by first class mail.

**Offer to Redeem**, dated October 31, 2013

**Exhibit A – Amended Agreement of Limited Partnership** marked to show changes from the current Partnership Agreement

**Exhibit B – Letter to Limited Partners**, dated September 19, 2013

**Exhibit C – Limited Partnership Interest Redemption Option Agreement**[1]

Exhibit A – Schedule of Optionees and their Interests (Not attached; to be attached upon Completion of the Offer to Redeem, as defined in the Offer to Redeem)
Exhibit B – Form of Property SPE Operating Agreement
Exhibit C – Criteria for Qualifying Property
Exhibit D – Form of Indemnity Agreement
Exhibit E – Form of Qualifying Property Assignment
Exhibit F – Form of Limited Power of Attorney

---

[1] If a limited partner elects to participate in the Alternative Redemption Structure, such limited partner should execute the signature page of the Redemption Option Agreement and return it with the signed Form, as noted above.

834310.1

*OFFER TO REDEEM*
*ANY AND ALL OUTSTANDING LIMITED PARTNERSHIP INTERESTS*
*&*
*CONSENT SOLICITATION*
*BY*
*JUSTICE INVESTORS*

October 31, 2013

Dear Limited Partner:

Justice Investors, a California Limited Partnership ("Justice," the "Partnership," "we" or "our"), is: (a) offering $1,385,000 in cash or property for each one percent (1%) limited partnership interest in Justice that you hold (the "Offer to Redeem"); and (b) seeking approval of our limited partners (the "Consent Solicitation") of certain amendments (the "Amendments") to our Amended and Restated Agreement of Limited Partnership, effective as of November 30, 2010 (the "Partnership Agreement"), which Amendments will be reflected in a new Amended and Restated Agreement of Limited Partnership, the form of which is attached hereto as Exhibit A (the "Amended Partnership Agreement").

The terms of the Offer to Redeem, Consent Solicitation and Amendments (collectively, the "Proposal") were developed in the course of negotiations between Portsmouth Square, Inc. ("Portsmouth") and Evon Corporation ("Evon"), our current general partners, and were summarized in the letter, dated September 19, 2013, sent by Portsmouth, Evon and us to you, a copy of which is attached hereto as Exhibit B (the "Letter"). In the Letter, you were requested to provide a non-binding preliminary indication of interest in having your limited partnership interests redeemed by the Partnership. We have received enough indications of interest to warrant going forward with the Proposal.

The Letter, together with the Offer to Redeem and Consent Solicitation, the attached appendices, Redemption Election, Written Consent and Proxy, and related instructions, are collectively referred to as this "Offer Letter."

**ALL TENDERS MUST BE RECEIVED NO LATER THAN 12:01 AM (PST) ON SATURDAY, NOVEMBER 30, 2013, UNLESS WE DECIDE, IN OUR SOLE DISCRETION, TO EXTEND THAT DEADLINE.**

832861.9

## IMPORTANT

ALTHOUGH EVON HAS PARTICIPATED IN THE NEGOTIATIONS GIVING RISE TO THE PROPOSAL, IT IS NOT TAKING ANY POSITION AS TO WHETHER YOU SHOULD TENDER YOUR LIMITED PARTNERSHIP INTERESTS, PARTICIPATE IN THE ALTERNATIVE REDEMPTION STRUCTURE OR CONSENT TO THE AMENDMENTS.

WHILE PORTSMOUTH SUPPORTS THE PROPOSAL, BECAUSE EACH LIMITED PARTNER'S INVESTMENT DECISION IS A PERSONAL ONE, BASED ON ITS OWN FINANCIAL CIRCUMSTANCES, EACH LIMITED PARTNER MUST MAKE ITS OWN DECISION WHETHER TO TENDER ITS LIMITED PARTNERSHIP INTERESTS OR PARTICIPATE IN THE ALTERNATIVE REDEMPTION STRUCTURE, AND, IF IT CHOOSES TO DO SO, THE PORTION OF ITS LIMITED PARTNERSHIP INTERESTS TO TENDER OR PARTICIPATE, AND, IF IT DOES NOT TENDER ANY OF ITS LIMITED PARTNERSHIP INTERESTS OR PARTICIPATE IN THE ALTERNATIVE REDEMPTION STRUCTURE, WHETHER TO CONSENT TO THE AMENDMENTS.

OTHER THAN AS SPECIFICALLY CONTEMPLATED HEREIN, NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION IN CONNECTION WITH THE OFFER TO REDEEM AND CONSENT SOLICITATION THAT IS NOT CONTAINED IN THIS OFFER LETTER. YOU MUST NOT RELY ON ANY SUCH RECOMMENDATION OR INFORMATION OR REPRESENTATION AS HAVING BEEN AUTHORIZED BY THE PARTNERSHIP.

THIS TRANSACTION HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS PASSED ON THE FAIRNESS OR MERITS OF THIS TRANSACTION OR ON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

You may direct questions, requests for assistance and requests for additional copies of this Offer Letter to:

Justice Investors
750 Kearny Street, Suite 502
San Francisco, CA 94108
Attn:  Geoffrey Palermo
e-mail:  gmp@justiceinvestors.com
fax:  (415) 984-0783
phone: (415) 984-0780

2

832861.9

This Offer Letter is intended to advise you of the specific steps you will need to take in order to tender your limited partnership interests or participate in the Alternative Redemption Structure and vote on the Amendments and provide you with supplemental information concerning the details of the Proposal.

### Why are we sending this Offer Letter to the limited partners?

The Offer to Redeem will provide you with an opportunity to monetize your limited partnership interests, should you wish to do so, and also benefit those limited partners who share Portsmouth's long-term investment objectives and wish to retain their limited partnership interests. **Neither the Partnership, nor either of Portsmouth or Evon, is making any recommendation as to whether limited partners should tender their limited partnership interests or participate in the Alternative Redemption Structure.** All limited partners considering whether to tender their limited partnership interests or participate in the Alternative Redemption Structure must rely on their own independent advisors with respect to such decision.

### What will I receive if I tender my limited partnership interests?

As described in the Letter, Justice is offering to redeem, for cash or property, all or part of the limited partnership interests of those limited partners wishing to tender their limited partnership interests at a value of $1,385,000 per one percent (1%) interest (the "Redemption Value"). The Redemption Value was determined following extensive negotiations between Portsmouth and Evon. The Proposal is conditioned on there being a minimum tender of at least thirty-four percent (34%) of the limited partnership interests (or sixty-eight percent (68%) of the limited partnership interests not held by Portsmouth). For purposes of deciding whether the minimum tender condition has been met, tender is considered to include both those limited partners electing to receive cash and those electing to participate in the Alternative Redemption Structure described below. The Proposal is also subject to other requirements discussed below. If the minimum tender condition and the other requirements are not satisfied, then the Offer to Redeem will be terminated and the Partnership Agreement will not be amended.

### Is there an alternative to redemption for cash?

Justice is also offering, as a result of negotiations between Portsmouth and Evon, an Alternative Redemption Structure to the cash redemption. This structure allows electing limited partners up to one year: (i) to locate Qualifying Property for purchase by the Partnership through a specially formed Property Special Purpose Entity; and then (ii) to elect to receive such Qualifying Property in redemption of their limited partnership interests. The Alternative Redemption Structure also allows the Partnership the option to redeem the interests of electing limited partners who do not exercise their own options. However, if neither the electing limited partners nor the Partnership were to exercise the redemption options described above, then such limited partners would remain in the Partnership. As the foregoing is only a brief summary of the Alternative Redemption Structure, limited partners and their advisors are referred to the form of Limited Partnership Interest Redemption Option Agreement attached hereto as Exhibit C (the "Redemption Option Agreement") for complete terms and conditions of the Alternative Redemption Structure. Please review the FAQs attached to this Offer Letter as Appendix A for

3

additional information about the Alternative Redemption Structure. If you elect to participate in the Alternative Redemption Structure, then you must return the Redemption Option Agreement, together with the Form of Redemption Election, each signed by the limited partner making such election. Regardless of the date you sign the Redemption Option Agreement, the effective date of that agreement will be the date on which all of the conditions to the Offer to Redeem have been satisfied.

**Neither the Partnership, nor either of Portsmouth or Evon, is making any recommendation as to whether limited partners should tender their limited partnership interests or participate in the Alternative Redemption Structure.** All limited partners considering whether to tender their limited partnership interests or participate in the Alternative Redemption Structure must rely on their own independent advisors with respect to such decision.

**NEITHER THE PARTNERSHIP, NOR EITHER OF PORTSMOUTH OR EVON, IS MAKING ANY REPRESENTATION AS TO THE FEDERAL INCOME TAX CONSEQUENCES OF AN ELECTION TO PARTICIPATE IN THE ALTERNATIVE REDEMPTION STRUCTURE. LIMITED PARTNERS SHOULD CONSULT WITH THEIR PERSONAL ADVISORS IN REACHING A DECISION AS TO WHETHER TO ELECT THE ALTERNATIVE REDEMPTION STRUCTURE.**

**EACH LIMITED PARTNER PARTICIPATING IN THE ALTERNATIVE REDEMPTION STRUCTURE WILL BE REQUIRED TO HOLD THE PARTNERSHIP, PORTSMOUTH, EVON AND OTHERS HARMLESS AGAINST ANY AND ALL LIABILITIES WHICH ARISE FROM ANY PROPERTY IDENTIFIED BY SUCH LIMITED PARTNER PURSUANT TO THE ALTERNATIVE REDEMPTION STRUCTURE.**

*If I tender some or all of my limited partnership interests or elect to participate in the Alternative Redemption Structure, can I withdraw my tender or election?*

No. You will not be allowed to withdraw your tender or election unless the Offer to Redeem is terminated.

*Why is the Proposal structured as a cash redemption by Justice or an election to participate in the Alternative Redemption Structure rather than a purchase of limited partnership interests by Portsmouth?*

While either a redemption by the Partnership, through a cash payment or pursuant to the Alternative Redemption Structure, or the purchase of limited partnership interests by Portsmouth would provide the limited partners with an opportunity to obtain liquidity for their investment, redemption by the Partnership, through a cash payment or pursuant to the Alternative Redemption Structure, would increase the respective proportionate ownership of the Partnership of those limited partners who elect not to take part in the Offer to Redeem. In the case of a direct purchase by Portsmouth, only Portsmouth would increase its limited partnership interest percentage. The increase in their percentage ownership could be viewed as a benefit to such remaining limited partners, while the increase in debt taken on by the Partnership in order to

4

fund the redemption for cash or pursuant to the Alternative Redemption Structure could be viewed as a negative factor to remaining limited partners.

***How do I tender my limited partnership interests for redemption for cash or elect to participate in the Alternative Redemption Structure?***

You may elect to tender all or part of your limited partnership interests for the Redemption Value in cash or to elect the Alternative Redemption Structure by completing and filling out the Redemption Election Form, which includes a written consent and proxy, attached as Appendix B to this Offer Letter. Your percentage interest and number of partnership units you own is already set forth on the form. To assist you in filling out the form, an instruction page is included in Appendix B. A self-addressed, postage prepaid envelope is enclosed for your convenience. We are also requesting that you give your written consent and proxy to approve the Amendments and meet the other conditions necessary to complete the Offer to Redeem and the refinancing of the Partnership's Hotel asset, described below. **The effectiveness of the Proposal is subject to: (1) a minimum tender of, and/or election to participate in the Alternative Redemption Structure by, at least thirty-four percent (34%) of the limited partnership interests; (2) approval by the holders of at least seventy-five percent (75%) of the limited partnership interests of the Amendments, which will take effect concurrently with the refinancing of the Hotel (as defined below); and (3) the consummation of the refinancing of the Hotel.**

**ALL TENDERS MUST BE RECEIVED NO LATER THAN 12:01 AM (PST) ON SATURDAY, NOVEMBER 30, 2013, UNLESS THAT DEADLINE IS EXTENDED IN THE SOLE DISCRETION OF JUSTICE.**

***What is the source of funds for the Offer to Redeem?***

The Offer to Redeem will be funded through a refinancing of the Partnership's principal asset, the Hilton San Francisco Financial District (the "Hotel"), which will take advantage of current favorable interest rates. In addition to funding the Offer to Redeem, we believe that refinancing the Hotel now will help provide for the long-term financial stability of the Partnership. Portsmouth believes that such refinancing is currently available in amounts necessary to fund the Offer to Redeem as set forth above.

***What is the value of my limited partnership interest?***

We are not aware of any public market for your limited partnership interests or any current pending offers for your limited partnership interests other than our Proposal. In addition, the Partnership Agreement contains limits on who may purchase limited partnership interests, further limiting the pool of prospective buyers and values you may be able to realize. However, we are aware of certain small individual private purchases and sales of limited partnership interests in the past three years, and believe those transactions have occurred within a range of $80,128 and $213,086 per one percent (1%) interest. In addition, in March 2013, Portsmouth made a "Dutch" tender offer to the limited partners, giving you the opportunity to receive between $800,000 and $900,000 per one percent (1%) limited partnership interest held by you. Fewer than ten percent (10%) of the limited partnership interests were tendered, and the offer was not completed. We

832861.9

believe that the Redemption Value is substantially higher than any value ascribed in any offer previously made for limited partnership interests in Justice.

Neither Portsmouth nor Justice have obtained an appraisal or valuation for the limited partnership interests and do not intend to obtain an appraisal in connection with the Redemption. Ultimately, the value of a limited partnership interest is the price that a willing buyer and willing seller are able to agree upon.

While we do not make any representations as to the value of the limited partnership interests, there are certain resources that are available that you might want to consider. Justice regularly tracks information available from third party resources and companies such as Hospitality Valuation Services (as to hotel sales in the San Francisco Bay Area) and valuation tools (such as capitalization rates and other industry information). Valuations for limited partnership interests may vary significantly from the value of the Partnership's assets due to a variety of adjustments (such as minority and liquidity discounts) that are common in investments such as the limited partnership interests in Justice. You may also want to consider other financial information we have previously provided to you, including your K-1 tax information and annual financial statements for the year ended December 31, 2012.

Portsmouth and Justice believe that while the hotel industry is cyclical and subject to a number of risks, because of the strength of the hotel market in San Francisco, the value of the Partnership's assets may increase over time.

Please feel free to contact Geoff Palermo at Justice Investors by email at gmp@justiceinvestors.com for any such information that may be available through the Partnership.

### *How do I know Justice won't sell the Hotel for more money after I have tendered my limited partnership interests for redemption or elected to participate in the Alternative Redemption Structure?*

Portsmouth has agreed to an "anti-flip" provision that will protect you in the event that the Hotel is sold before three (3) years from the consummation of the refinancing of the Hotel. If that were to occur, then any limited partner whose interest in the Partnership has been redeemed (or which can be redeemed pursuant to the Alternative Redemption Structure) will receive an additional payment equal to the excess of (i) the value of such limited partner's limited partnership interest in Justice (without accounting for any subsequent dilution following the refinancing) had the limited partner still held that interest at the time of the Hotel sale, less (ii) such limited partner's Redemption Value. This provision will apply to any sale of the Hotel, or any other transfer of the Hotel for value to any person or entity not controlled by Portsmouth or any affiliate of Portsmouth. However, this provision will only apply to sale of the Hotel subject to a binding contract entered into on or before three (3) years from the consummation of the financing of the Hotel; after that time redeeming limited partners will have no right to share in proceeds from a subsequent sale.

832861.9

*What are the conditions to the effectiveness of the Offer to Redeem?*

The effectiveness of the Offer to Redeem is subject to: (1) a minimum tender of, and/or election to participate in the Alternative Redemption Structure by, at least thirty-four percent (34%) of the limited partnership interests; (2) approval by the holders of at least seventy-five percent (75%) of the limited partnership interests of the Amendments, which will take effect concurrently with the refinancing of the Hotel; and (3) the consummation of the refinancing of the Hotel (collectively, the "Conditions").

*What consents and proxies are being solicited?*

In conjunction with seeking the tender of limited partnership interests for redemption or participation in the Alternative Redemption Structure, we are concurrently soliciting written consents and proxies from the limited partners to accomplish the following:

- To amend the Partnership Agreement to provide for a single general partner, to provide for Class B limited partnership interests (which, if issued, would represent interests in the Partnership's profits, losses and capital) and to delete provisions which prohibit or restrict purchases or transfers of limited partnership interests (including purchases by Portsmouth and Justice) that result, or could result, in a material reassessment of the Partnership's Hotel asset. (See below for a further explanation of "material reassessment.") Upon satisfaction of the Conditions, Justice will proceed with the redemption of those limited partners who tendered their limited partnership interests for cash and funding the Property SPE (as defined in the Redemption Option Agreement) with respect to those limited partners electing to participate in the Alternative Redemption Structure, and Evon will withdraw as a general partner (the "Completion of the Offer to Redeem").

- To approve the refinancing of the Partnership's Hotel asset and the redemption of limited partnership interests for cash or pursuant to the Alternative Redemption Structure, pursuant to the Offer to Redeem.

- To take any other actions reasonably necessary to implement the refinancing of the Hotel and the implementation of the Offer to Redeem.

Limited partners who accept the Offer to Redeem (whether the cash or Alternative Redemption Structure) will, by such acceptance, grant to Portsmouth their irrevocable proxies, which are coupled with an interest (a) to vote their limited partnership interests in order to implement the Offer to Redeem and approve the Amendments, and (b) with respect to those limited partners electing the Alternative Redemption Structure, following Completion of the Offer to Redeem, to vote their limited partnership interests as Portsmouth determines in its sole discretion during the twelve (12) month period following the Completion of the Offer to Redeem; provided, however, that, without the consent of Evon and those limited partners holding at least seventy-five percent (75%) of the limited partnership interests electing the Alternative Redemption Structure, Portsmouth cannot act in a manner that is not in compliance with the Redemption Option Agreement attached hereto as Exhibit C.

7

Portsmouth will vote its fifty percent (50%) limited partnership interests in favor of the Amendments and the other proposals.

The text of the proposed Amended and Restated Partnership Agreement, which incorporates the proposed Amendments, is attached to this letter as Exhibit A and is incorporated herein by reference. The Amendments do not increase the powers of the general partners but consolidate those powers into Portsmouth, which will serve as the sole general partner and which will control at least seventy-five percent (75%) of the limited partnership interests and, therefore, have the ability to control the outcome of any limited partner vote.

### What is required to amend the Partnership Agreement?

Amendments to the Partnership Agreement may be made only if approved by the general partners and at least seventy-five percent (75%) of the limited partnership interests. Although Evon has participated in the negotiations giving rise to the Proposal, it is not taking any position as to whether you should accept the Proposal, but has committed to support the Amendments, if the minimum tender of at least thirty-four percent (34%) of the limited partnership interests is met. The Amendments will only be effective concurrently with the Completion of the Offer to Redeem and the refinancing of the Hotel.

The Partnership Agreement has provisions that permit actions to be taken by written consent of the limited partners, without the necessity of a meeting, and for limited partners to authorize another person or persons to act by proxy with respect to the limited partners' interest in the Partnership. Portsmouth will vote its fifty percent (50%) limited partnership interest in favor of the Amendments and any proposals necessary to effectuate the Completion of the Offer to Redeem and the refinancing of the Hotel.

### Why should the Partnership Agreement be amended to provide for only one general partner?

Portsmouth believes that having two general partners for the Partnership results in an inefficient, cumbersome and more costly management structure and is not in the best interests of the Partnership moving forward. Upon implementation of the Proposal and the withdrawal of Evon as a general partner, Portsmouth will be Justice's sole general partner.

### What are "material reassessments" of the Partnership property and what will be the effect on the Partnership if those provisions in the Partnership Agreement are amended?

Under California law residential and commercial properties are subject to certain protections from real estate tax reassessments. A tax reassessment of a property can be triggered by certain changes in ownership, including transactions that result in a person or entity having a more than fifty percent (50%) interest in the property. Portsmouth currently has a fifty percent (50%) limited partnership interest in Justice. If the Completion of the Offer to Redeem is effectuated, Portsmouth's limited partnership interest, along with the interests of all Limited Partners who elect to remain with the Partnership, will proportionately increase. Such changes in limited partnership ownership percentages would likely result in a reassessment of the Partnership property and higher real estate taxes. Portsmouth believes that the operations of the Hotel could support any such property tax increases. The Completion of the Offer to Redeem cannot be

832861.9

effected without an amendment to the Partnership Agreement deleting the prohibition on transfers of limited partnership interests that result, or could result, in a material reassessment.

*What are the economic consequences of electing to redeem my limited partnership interests now?*

Limited Partners whose limited partnership interests are redeemed for cash under the Proposal will receive a current cash payment based on the Redemption Value, but will forgo any added value in, or income from, Justice in the future. Neither Portsmouth, Evon nor Justice is making any representations or predictions as to the future value of, or income from, the Partnership.

For those limited partners considering electing the Alternative Redemption Structure and electing to be redeemed through a property distribution or who are redeemed should the Partnership elect its option to redeem them, their future participation in the value and income of Justice will be modified as provided in the Amended Partnership Agreement so that such partners have a smaller interest in income from the Hotel (but a larger interest in income, if any, from the entity formed to implement the Redemption Option Agreement). Neither Portsmouth, Evon nor Justice is making any representation or prediction as to the future value of, or income from, any property received by a limited partner pursuant to the Alternative Redemption Structure.

*What are the Federal Income Tax consequences of electing to participate (or not to participate) in the Offer to Redeem?*

Limited partners who tender their interests for cash redemption will recognize gain or loss in the amount of the difference between the amount of cash they receive in redemption of their limited partnership interests plus the amount of any liability the limited partner is relieved of upon the redemption less the adjusted tax basis the partner has in their limited partnership interests. Limited partners should consult their tax advisor in order to determine the amount of gain or loss that they would receive in a cash redemption.

**NEITHER THE PARTNERSHIP, NOR EITHER OF PORTSMOUTH OR EVON, IS MAKING ANY REPRESENTATION AS TO THE FEDERAL INCOME TAX CONSEQUENCES OF AN ELECTION TO PARTICIPATE IN THE ALTERNATIVE REDEMPTION STRUCTURE. LIMITED PARTNERS SHOULD CONSULT WITH THEIR PERSONAL ADVISORS IN REACHING A DECISION AS TO WHETHER TO ELECT THE ALTERNATIVE REDEMPTION STRUCTURE.**

*What other obligations will I have if I elect the Alternative Redemption Structure?*

Each limited partner who elects the Alternative Redemption Structure will be required to hold the Partnership, Portsmouth, Evon and others harmless against any and all liabilities which arise from any property identified by such limited partner pursuant to the Alternative Redemption Structure.

***Why is my limited partnership interest expressed both as a percentage and in number of units on the Redemption Election Form?***

The Partnership Agreement amendment that became effective on November 30, 2010 provides for limited partnership interests to be expressed in terms of "common units" to make transfers of limited partnership interests easier to administer and account for rather than rounding off percentage interests to five or more decimal places. Your effective percentage interest remained the same after that amendment, even though it is now also stated in numbers of common units. Each one percent (1%) limited partnership interest is now equal to 10,000,000 common units. For example if you have a point five six three percent (0.563%) limited partnership interest it would be equal to 5,630,000 common units, out of a total of 1,000,000,000 common units for the entire Partnership.

***What if I want to remain a limited partner?***

All limited partners are free to decide whether or not to tender their limited partnership interests in the Offer to Redeem. Those limited partners that do not participate in the Offer to Redeem will remain as limited partners in Justice.  Assuming that the Conditions are satisfied, the limited partnership interests of those limited partners who do not elect to participate in the Offer to Redeem will increase in an amount proportionate to the percentages of the limited partnership interests that are redeemed.  For example, if thirty-four percent (34%) of the limited partnership interests are redeemed, a limited partner having a one percent (1%) interest limited partnership interest who does not elect to participate in the Offer to Redeem would have a limited partnership interest in Justice equal to approximately one point five one five percent (1.515%). However, you should be aware that one of the new provisions of the Amended Partnership Agreement provides for the issuance of Class B Profits Interests, which, if issued, will dilute any remaining limited partner's interest in future allocable income and distributions, if any.

Limited partners also should understand that if the Completion of the Offer to Redeem is effectuated, then (i) Justice will have significant additional debt; (ii) there may be a property reassessment; and (iii) the Amendments will go into effect, resulting in Portsmouth being the sole general partner.  These changes will affect any limited partner who elects not to tender its limited partnership interests.

***What if I want to remain a limited partner, but believe that the Offer to Redeem and Amendments to the Partnership Agreement are in the best interest of the Partnership?***

Limited Partners who do not want to take advantage of the Offer to Redeem and elect to remain as Limited Partners can still execute a consent and proxy to approve the Amendments and other actions necessary to implement the Completion of the Offer to Redeem and to refinance the Partnership's Hotel property.

***What if I want to remain a limited partner and do not believe that the Offer to Redeem and Amendments to the Partnership Agreement are in the best interests of the Partnership?***

Limited partners who not only do not want to take advantage of the Offer to Redeem, but who also believe that the Offer to Redeem and Amendments to the Partnership Agreement are not in

10

the best interests of the Partnership, need not execute and return the Redemption Election Form. Since both the Offer to Redeem and the Amendments require a certain percentage of all limited partners (not just those voting), any non-vote will be counted as a vote against. However, if a sufficient percentage of the limited partners support the Offer to Redeem and the Amendments, the Offer to Redeem will proceed even if some limited partners do not consent.

***What if I have signed that certain "Partners Agreement," the terms of which call for additional restrictions on the sale of limited partner interests?***

It is Portsmouth's position that all limited partners of Justice should be free to vote, sell, transfer or to keep their limited partnership interests in a manner that meets their own economic interests and individual investment needs. While Evon's position is that the "Partners Agreement" requires an affirmative vote among the limited partners who signed that Agreement in order for such limited partners to accept the Offer to Redeem, Evon itself intends to tender its limited partnership interests and will support a vote in favor of proceeding with the Offer to Redeem.

***If all of the conditions to implement the Offer to Redeem are met, when can a Limited Partner tendering a limited partnership interest expect to be paid?***

You have until 12:01 AM (PST) on Saturday, November 30, 2013 to tender your limited partnership interests or elect to participate in the Alternative Redemption Structure, unless Justice decides to extend the deadline. Absent unforeseen circumstances and assuming the Conditions are satisfied, we expect the cash Redemption Value to be paid promptly after the redemption period expires to those limited partners electing to be paid in cash. If, for any reason, the Conditions have not been satisfied by December 31, 2013, then no redemption will occur and the Partnership Agreement will not be amended. The Alternative Redemption Structure involves a different timetable and limited partners electing this alternative should carefully review all operative documents relating to the Alternative Redemption Structure to evaluate that timetable and should consult with their own advisors concerning it. Instructions and a Redemption Election Written Consent and Proxy form follow this letter. Please read and follow the instructions so your elections and choices are properly represented and recorded.

Sincerely,

Geoffrey Palermo,
Justice Investors, LP

cc:     Evon Corporation, attn.: Scott Braunstein, President
        Portsmouth Square, Inc., attn.: Michael Zybala, Vice President and Secretary

11

**APPENDIX A**

## FAQs

This document seeks to answer some of the frequently asked questions that may come up relating to the proposed redemption of limited partnership interests in Justice Investors, and in particular, the Alternative Redemption Structure (the "Qualifying Property redemption option"). Please understand, however, that this document is merely a summary, and your actual legal rights and obligations are set forth in the Redemption Option Agreement and the exhibits thereto. In addition, because each partner has a unique tax situation, neither Evon nor Justice can advise you of any tax consequences to you resulting from these various options. You should look to your own professional tax advisor for any tax advice.

*I have decided to redeem my limited partner interest in Justice. What choices do I have?*

You have three choices: 1) Redeem your limited partner interest for cash; 2) Enter into an arrangement giving you the election to redeem your limited partner interest for Qualifying Property or cash; or 3) A combination of 1 & 2.

*Why wouldn't I just take the cash?*

For some partners taking their redemption in cash makes the most sense. It is less complicated than the Qualifying Property redemption option, has less cost, and will allow you to receive money right away. Others, on the other hand, may prefer to seek to defer taxes due on their gain. Most partners will likely have to pay both federal and state capital gains tax on money they receive. Other taxes may also apply. Only a professional tax person can tell you precisely what your tax situation is, and the tax effect to you of either a cash redemption or the Qualifying Property redemption option, and we strongly recommend that you speak with a professional tax advisor. This is a personal decision and neither Justice nor Evon will be able to assist you with decision.

*What would my tax be if I just took cash?*

You will need to check with your tax advisor, as neither Justice nor Evon can provide this information to you.

*Do you mean that I can avoid paying tax by buying property instead of taking cash?*

No. Purchasing property under the Qualifying Property redemption option likely will only allow you to defer paying the tax to some time in the future. In certain cases income tax may go away if you die holding the Qualifying Property. Your tax expert can explain the details to you and may have other ideas that could benefit you.

*What happens when I'm no longer a limited partner in Justice and don't get a K-1 showing an allocation of non-recourse debt to me?*

There are potentially significant tax consequences to this whose effect you should discuss with your personal tax advisor.

### *What is meant by Qualifying Property?*

Qualifying Property is defined as real estate (either residential, rental, or commercial) or vehicles. Property whose acquisition or ownership creates an unacceptable risk to Evon or Justice, or is unduly complicated, will not qualify and will be rejected.

### *What are the likely reasons why Evon and Justice would decide a property creates an unacceptable risk and reject a property that I want to buy?*

Justice will reject the property if it concludes that owning the property as part of this Qualifying Property redemption option creates a risk of legal liability to Justice, Evon, or any entity they create to hold the property. For example, property will be rejected if there are environmental issues with the property, or dangerous conditions or if the lender could hold Justice, Evon or the purchasing entity liable. You should refer to Exhibit C to the Redemption Option Agreement for further details on what will be required in order to obtain a Qualifying Property.

### *If I choose to receive Qualifying Property what is the process?*

You will first need to identify an appropriate Qualifying Property and agree with the seller and other parties on all necessary documents (such as a purchase agreement, any loan documents, etc.). You will then need to submit these documents and other details of the property to Evon and Justice for approval no later than 24 days before the date you wish to close, although you are encouraged to submit these documents sooner if feasible to minimize the possibility of any unforeseen delays. Evon and Justice will then evaluate the risks and complexity associated with buying the property and may ask for further information. You will need to sign an indemnity agreement, an assignment and perhaps other documentation. Assuming Evon and Justice determine that the property is a Qualifying Property, Justice will then purchase the property through a specially formed entity. No earlier than 15 days, nor later than 30 days, after the property is purchased by Justice, you have the option to request that such property (or the membership interest in any special purpose entity formed to acquire such property) be transferred to you in redemption of your limited partnership interest in Justice. Justice will then transfer the property to you within 5 days following its receipt of such request.

### *I don't understand why I have to assign the property to Justice and do I have to sign the assignment in Exhibit E to the Redemption Option Agreement?*

Justice, not you, will be purchasing and must own the property. This is required since only a distribution from Justice to you qualifies for deferral treatment under the tax code. While you may sign all the initial paperwork for the property purchase, you must assign the right to buy the property to an entity formed by Justice, which will ultimately purchase the property. You should use the assignment form in Exhibit E, or can use another form if it is acceptable to Evon and Justice.

### *Will there be two transfer taxes because Justice is buying the property and then transferring it to me?*

There are likely to be two transfer taxes if the Qualifying Property is real estate in California. Transfer tax rules differ state to state and sometimes between cities or counties within states, so

832861.9

to answer this question you will need to consult someone familiar with the transfer tax rules of the location where proposed Qualifying Property is located.

### Can I borrow money to purchase property?

Yes, however there can unequivocally be no recourse to Evon, Justice, or the entity they form to buy the property. This can make it more difficult or costly to obtain a loan, so we suggest you talk to your lender early in on in the process if you wish to borrow money.

### Will there be any costs to me for using the Qualifying Property redemption option?

Yes.  Because not all partners are participating in the Qualifying Property redemption option, it is not fair to ask them to pay for Evon's or Justice's time and costs to administer the plan and to review and process a property purchase. Instead each partner will pay a fee to cover such costs when that partner seeks to acquire property. There is a fee each time the partner seeks to acquire property; and because Justice and Evon will incur costs even if the purchase does not go through, there will be a fee even if the property sale does not close.

### Will I need to put insurance in place on the property before it is transferred to me?

Yes. Besides insuring the property itself, it will also be necessary to have liability insurance protecting Justice and Evon during the period when Justice owns the property. You will need to arrange for this liability insurance before Justice acquires the property so that it is in effect immediately upon acquisition.

### Can I use the property from the time Justice acquires it until the time it is transferred to me?

In most cases yes, but you will need to enter into a lease agreement with Justice during that time.

### Can I purchase more than one property?

Yes, and the closings do not need to occur at the same time.

### My brother and I want to use our funds to purchase a property together. Can we do this?

Yes.

### How long do I have to purchase property?

You will have 12 months for Justice to complete your purchase(s).

### What happens if I don't acquire a property in 12 months or have funds left over?

At the end of 12 months, upon request, any funds you have left will be turned over to you if you so elect.  If you do not request that the funds be turned over to you, Justice has the right to turn them over to you on their own initiative.

832861.9

*If I decide after three months that I do not want Justice to buy a property on my behalf and would just like to receive the cash can I receive it then?*

No.  If you do not choose to redeem your interest for cash up front, no further cash distribution will be available from Justice for a full 12 months except to purchase Qualifying Property. The purpose of this is to protect the Qualifying Property redemption option for all the other partners who have opted to redeem their interest in this manner.

*Can I use funds allocated to me pursuant to the Alternative Redemption Structure to pay for the due diligence costs and loan application fees before Justice purchases the property?*

No.  You will have to pay these costs yourself. However, you may ask Justice to reimburse you for these costs out of your Allocable Amount after closing.

*Who should I call if I have any questions?*

If you have questions regarding your past Justice K-1s, please call Geoff Palermo (415-984-0780). Once you have identified a property you would like Justice to purchase, please contact Scott Braunstein (925-385-0422).  Neither Geoff nor Scott, however, will be able to advise you on any specific tax related questions.

Appendix A-4

**EXHIBIT A**
**FORM OF AMENDED AND RESTATED AGREEMENT OF**
**LIMITED PARTNERSHIP**
(marked to show changes to the Amended and Restated Agreement of Limited Partnership
dated as of November 30, 2010)

832861.8

**AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP**
**OF**
**JUSTICE INVESTORS**
**A CALIFORNIA LIMITED PARTNERSHIP**

# TABLE OF CONTENTS

Page

1.  CONTINUATION OF LIMITED PARTNERSHIP; ELECTION OF GOVERNING LAW ............................................................................................1
2.  NAME AND PLACE OF BUSINESS .........................................................1
3.  PURPOSE ....................................................................................................2
4.  TERM OF PARTNERSHIP; RECORDINGS; AGENT FOR SERVICE OF PROCESS ....................................................................................................2
    4.1   Term ..............................................................................................2
    4.2   Certificate of Limited Partnership ...............................................2
    4.3   Agent for Service of Process ........................................................2
5.  DEFINITIONS ............................................................................................2
    5.1   Adjusted Capital Contribution .....................................................2
    5.2   Capital Account ............................................................................2
    5.3   Capital Contribution .....................................................................3
    5.4   Cash Reserves ...............................................................................3
    5.5   Code .........................................................3Class B Limited Partnership Interest3
    5.6   Co-General Partner ..............................................................3Code4
    5.7   Distributable Cash ........................................................................4
    5.8   Effective Date ...............................................................................4
    5.9   Fiscal Year ....................................................................................4
    5.10  General Partner .............................................................................4
    5.11  Limited Partner .............................................................................4
    5.12  Majority In Interest ......................................................................4
    5.13  Majority In Interest of Limited Partners ......................................4
    5.14  Managing General Partner .............................................................4
    5.15  Net Profits and Net Losses 4
    5.15  Nonrecourse Deductions ...............................................................4
    5.16  Nonrecourse Deductions ...............................................................4
    5.17  Original Capital Contribution .....................................................45
    5.185.17 .....................................................Participation Percentage5
    5.195.18 ......................................................................Parties 5
    5.19  Partner ...........................................................................................5
    5.20  Partner Nonrecourse Deductions .................................................5
    5.21  Partner Nonrecourse Deductions .................................................5
    5.22  Partnership Minimum Gain ...........................................................5
    5.235.22 ...................................................................Property 5
    5.23  Redemption Option Agreement .....................................................5
    5.24  Regulations ...................................................................................5
    5.25  Super Majority In Interest .............................................................5
    5.26  Transfer .........................................................................................5
    5.27  Unit ...............................................................................................5

i

## TABLE OF CONTENTS

Page

6. **PARTNERSHIP CAPITAL CONTRIBUTIONS AND LOANS**.................................56

    6.1    Capital Contribution of the General Partner........................................56

    6.2    Capital Contribution of the Limited Partners .....................................56

    6.3    Additional Capital Contributions .........................................................56

    6.4    Capital Accounts ..................................................................................6

    6.5    Interest on Contributions .....................................................................6

    6.6    Use of Capital Contributions ...............................................................6

    6.7    Limited Liability of Limited Partners..................................................6

    6.8    Role of Limited Partners ......................................................................6

    6.9    Return of Capital ..................................................................................6

    6.10   Loans by a Partner ...............................................................................6

    6.11   Foreign Partners...................................................................................67

7. **ALLOCATIONS** ...............................................................................................67

    7.1    Allocation of Net Profits ......................................................................7

    7.2    Allocation of Net Losses ......................................................................7

    7.3    Allocation of Nonrecourse Deductions ...............................................7

    7.4    Allocation of Partner Nonrecourse Deductions ..................................7

    7.5    Allocation of Tax Credits .....................................................................7

    7.6    Qualified Income Offset .......................................................................7

    7.7    Minimum Gain Chargeback .................................................................7

    7.8    Allocations of Book Items ...................................................................78

    7.9    Safe Harbor Election ...........................................................................8

8. **DISTRIBUTIONS** .............................................................................................79

    8.1    Redemption ..........................................................................................9

    8.2    Distribution of Distributable Cash.......................................................89

    8.2 8.3  To Whom Distributions are Made.......................................................89

9. **POWERS AND DUTIES OF THE PARTNERS** .........................................89

    9.1    Powers and Duties of the Managing General Partner..........................89

    9.2    Duty to Cooperate with Co-General Partner .......................................9

    9.3    Powers and Duties of the Co-General Partner.....................................10

    9.4    Decisions of Both General Partners .....................................................11

    9.5    Asset Manager .....................................................................................13

    9.6    Management Decisions.........................................................................13

    9.7    Independent Activities of Partners ......................................................13 12

    9.8 9.3  Tax Matters Partner .............................................................................13 12

    9.9 9.4  Execution of Documents ......................................................................13 12

    9.10 9.5 ........................................................................ Liability Indemnification 14 12

    9.11 9.6 .........................................................Compensation of General Partners 14 12

    9.12 9.7 ............................................................Voting Rights of Limited Partners 14 13

    9.13 9.8 ............................................................Withdrawal of General Partner 15 14

10. **RESTRICTIONS ON TRANSFER**.................................................................15 14

830004.1
830001.12

TABLE OF CONTENTS

Page

10.1 ~~Representations by Portsmouth and Proposed Transferee~~ ....... ~~15~~
~~10.2~~ ~~Withholding Consent~~ ....... ~~15~~
~~10.3~~ ~~Materially Harm Partnership; Material Reassessment Risk~~ ....... ~~16~~
~~10.4~~ ~~New Partners to Be Bound by Partnership Agreement~~ ....... ~~16~~14
~~10.5~~10.2 ....... Assignment of Distribution Rights ~~16~~14
~~10.6~~10.3 ....... Examination Rights ~~16~~15
~~10.7~~10.4 ....... Obligations of Transferees ~~16~~15
~~10.8~~10.5 ....... Substitute Partners ~~16~~15
~~10.9~~10.6 ....... Rights of Assignee ~~16~~15
~~10.10~~10.7 ....... Division of Allocations and Distributions ~~17~~15
~~10.11~~10.8 ....... Agreement Applies to Transferred Interest ~~17~~15
~~10.12~~10.9 ....... Heirs, Devisees and Legatees ~~17~~15
~~10.13~~10.10 ....... No Dissolution ~~17~~16

**11.** **DISSOLUTION AND WINDING UP OF THE PARTNERSHIP** ....... ~~17~~16
11.1 Dissolution of Partnership ....... ~~17~~16
11.2 Continuation of Partnership ....... ~~18~~16
11.3 Winding Up of the Partnership ....... ~~18~~16
11.4 Right to Receive Property ....... ~~19~~17

**12.** **BOOKS, RECORDS, AND OFFICE SPACE** ....... ~~19~~17
12.1 Books of Account ....... ~~19~~17
12.2 Accounting and Reports ....... ~~19~~17
12.3 Banking ....... ~~19~~18
12.4 Accountants ....... ~~19~~18
12.5 Partnership Office ....... ~~19~~18

**13.** **ADJUSTMENT OF BASIS ELECTION** ....... ~~20~~18

**14.** **WAIVER OF ACTION FOR PARTITION** ....... ~~20~~18

**15.** **AMENDMENTS** ....... ~~20~~18

**16.** **RESOLUTION OF DISPUTES** ....... ~~20~~18
16.1 Mediation ....... ~~20~~18
16.2 Arbitration of Disputes ....... ~~20~~18
16.3 Injunctive Relief and Remedies to Enforce Arbitration and Mediation ....... ~~20~~19
16.4 Legal Fees and Costs ....... ~~21~~19

**17.** **NOTICES** ....... ~~21~~19

**18.** **ATTORNEYS' FEES** ....... ~~21~~20

**19.** **SPECIAL POWER OF ATTORNEY** ....... ~~21~~20
19.1 Grant of Power ....... ~~21~~20
19.2 Scope of Power ....... ~~22~~20

**20.** **PARTNERSHIP MEETINGS** ....... ~~22~~21

TABLE OF CONTENTS

Page

20.1   Call and Place of Meetings ........................................................... ~~22~~21
20.2   Notice of Meeting ........................................................................ ~~22~~21
20.3   Quorum ........................................................................................ ~~23~~21
20.4   Adjournment of Meetings ............................................................ ~~23~~21
20.5   Meetings Not Duly Called, Noticed or Held ............................... ~~23~~21
20.6   Waiver of Notice ......................................................................... ~~23~~22
20.7   Consent to Action Without Meeting ............................................ ~~23~~22
20.8   Proxies ........................................................................................ ~~24~~22

**21.   RECORD DATES** ................................................................................. ~~25~~23

21.1   Setting Record Date for Meetings ............................................... ~~25~~23
21.2   Setting Record Date for Distributions ........................................ ~~25~~23
21.3   Automatic Record Date ............................................................... ~~25~~23
21.4   Conduct of Meeting ..................................................................... ~~26~~24

**22.   MISCELLANEOUS** ............................................................................ ~~26~~24

22.1   Applicable Law ........................................................................... ~~26~~24
22.2   Severability ................................................................................. ~~26~~24
22.3   Further Assurances ...................................................................... ~~26~~24
22.4   Successors and Assigns ............................................................... ~~26~~24
22.5   Number and Gender ..................................................................... ~~26~~25
22.6   Entire Agreement ........................................................................ ~~26~~25
22.7   Non-Waiver; Consents ................................................................ ~~26~~25
22.8   Counterparts ................................................................................ ~~27~~25
22.9   Full Authority .............................................................................. ~~27~~25
22.10  Captions ...................................................................................... ~~27~~25
22.11  Expenses ...................................................................................... ~~27~~25
22.12  Parties in Interest ........................................................................ ~~27~~25
22.13  Dissenter's Rights ....................................................................... ~~27~~25

~~830001.1~~
830001.12